UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY CARL JOHNSON,

               Plaintiff,

vs.

THOMAS McCARTHY, *et al.*,

               Defendants.

_____/

Case No. 1:14-cv-1103

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a *pro se* prisoner plaintiff Henry Johnson pursuant to 42 U.S.C. § 1983. While plaintiff is currently in prison, this action involves claims against four police officers for incidents which occurred prior to his incarceration. This matter is now before the Court on defendants' motion for summary judgment (docket no. 43).

### I.      Background

This lawsuit arises from events which occurred on November 4, 2012. Plaintiff set forth the following allegations in his complaint. On that date, plaintiff drove his car into the parking lot of the Chicken Coop on South Division Avenue in Grand Rapids, Michigan. After parking the car and having a brief conversation with his passenger, Dominick Jones, plaintiff was "hit in the face with a harsh bright light." Compl. (docket no. 1, PageID.3-4). According to plaintiff, defendant Grand Rapids Police Department (GRPD) Officer Thomas McCarthy leapt from his police car, rushed to the driver's side of plaintiff's car, pointed his weapon in plaintiff's face, and told him to put his hands on the steering wheel. *Id*. Plaintiff thought he "was going to die" and urinated on himself. *Id*. at PatgeID.4. While Officer McCarthy held plaintiff and his passenger at gun point,

defendants GRPD Officers Adam Host and Jeremy Wortz arrived at the scene and conferred with McCarthy.  *Id.* at PageID.5.  Officers Host and Wortz snatched plaintiff out of the vehicle, violently slammed his head on the hood of police car leaving plaintiff "dazed," and then "violently wrenched" plaintiff's arms behind his back.  *Id.*  Plaintiff was not resisting either officer.  *Id.*  Plaintiff was handcuffed and searched, with the only contraband being found being a half-smoked marijuana cigarette tucked behind plaintiff's right ear.  *Id.*  Plaintiff alleged that there was no justification for Officer McCarthy to draw his weapon or for Officers Host and Wortz to violently remove plaintiff from his car and engage on an unprovoked attack upon plaintiff.  *Id.*  Plaintiff also named as a defendant GRPD Officer Justin Kribs.  Plaintiff's only claim against Officer Kribs is that he "stood idly [sic] by and allowed Plaintiff to be assaulted and battered by Defendants Host and Wortz." *Id.* at PageID.6.

Plaintiff's complaint alleged five counts against defendants.  In Count I, plaintiff alleged that defendants violated his substantive due process rights under 42 U.S.C. § 1983 and the Fourteenth Amendment.  In Count II, plaintiff alleged that defendants engaged in a civil conspiracy against him in violation of § 1983.  In Count III, plaintiff alleged that defendants violated § 1983 and the Eighth Amendment by using excessive force against him.  In Count IV, plaintiff alleged that defendants violated 42 U.S.C. § 1985 and the Fourteenth Amendment by violating his rights under the Equal Protection Clause.  In Count V, plaintiff alleged that GRPD Officers Host and Wortz committed an assault and battery against him in violation of Michigan law.  Compl. at PageID.6-13. Plaintiff seeks compensatory damages and injunctive relief.

2

## II.      Legal standard

Defendants seek summary judgment on all of plaintiff's claims.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the Court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell

3

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion

for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

   Plaintiff's response does not address the merits of the motion for summary judgment.

Rather, plaintiff stated that defendants' motion for summary judgment should be denied because they

did not file a supporting brief and there is undiscovered video evidence.  *See* Plaintiff's Response

(docket no. 50, PageID.307-308).   Plaintiff's claims are meritless.   First, defendants filed a

supporting brief. *See* Brief (docket no.44).  Second, the Court previously addressed plaintiff's claim

regarding the video evidence.  As discussed in an order denying plaintiff's motion to compel, the

Court noted that plaintiff did not cooperate when defendants offered to deliver the DVD to plaintiff.

*See* Order (docket no. 51, PageID.313-315) ("Defendants have asked that plaintiff obtain permission

from the MDOC to arrange for the delivery of the DVD but he has failed to provide it.  Defendants

cannot deliver contraband into a correctional facility.")

   Because plaintiff has not filed a substantive response to the motion for summary

judgment, the Court views it as unopposed.   "The fact that there has been no response to a summary

judgment motion does not, of course, mean that the motion is to be granted automatically."

*Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996).  However, when a motion for summary

judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial

court must conduct its own probing investigation of the record" to demonstrate the existence of

genuine issues of material fact.  *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th

Cir. 1992).  This being said, plaintiff did file a "verified complaint" which this Court will view as

an affidavit opposing the motion.  *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)(a

verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment).[1]

### III.    Plaintiff's federal claims

In Counts I, II, III and IV, plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

In Count IV, plaintiff also seeks relief under 42 U.S.C. § 1985(3).  To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of

---

[1] The Court has noted a marked increase in *pro se* prisoners, like plaintiff, filing "verified complaints" in civil rights cases rather than using the form provided by the Court.  While plaintiff apparently finds an advantage to proceeding in this manner, he is advised that one potential disadvantage is that a "verified complaint" containing false statements violates 18 U.S.C. § 1623(a), which provides that "Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court  .  .  .  of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both."

any right or privilege of a citizen of the United States.  *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996).

### A.    Count I

### 1.    Substantive due process

Plaintiff's claims alleged in Count I involve an alleged violation of the Fourth Amendment.  "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994).  Accordingly, defendants should be granted summary judgment as to plaintiff's substantive due process claim.

### 2.    Fourth Amendment claims against Officer McCarthy

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied[.]" *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotation marks, citations, and emphasis omitted).

Plaintiff alleged that his vehicle was parked and that he was illegally stopped and seized by Officer McCarthy.  "Under the Fourth Amendment, there are three types of permissible encounters between the police and citizens: consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some

6

questions; a temporary involuntary detention or *Terry*[2] stop which must be predicated upon "reasonable suspicion;" and arrests which must be based on probable cause." *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir. 1994).   *Terry* is a limited exception to the normal requirements of probable cause, which permits a police officer briefly to detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005).

> In evaluating the constitutionality of a *Terry* stop, we engage in a two-part analysis of the reasonableness of the stop. We first ask whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion.   In answering this question, we examine the totality of the circumstances to determine the reasonableness of the investigatory stop.

*Id*. (internal quotation marks and citations omitted).

"[T]he totality of the circumstances approach allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Martin*, 289 F.3d 392, 398 (6th Cir. 2002).  "[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation."  *Id*. citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).  "The fact that the stop occurred in a high crime area is among the relevant contextual considerations in a *Terry* analysis." *Martin*, 289 F.3d at 398 (internal quotation marks omitted).

Here, Officer McCarthy had reasonable suspicion to believe criminal activity was afoot.  It is undisputed that the stop occurred at approximately 2:00 a.m. at the Chicken Coop parking

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

lot.  McCarthy Aff. (docket no. 44-3, PageID.367).  McCarthy noticed a blue Ford Focus parked adjacent to a chain link fence, occupied by two black males, plaintiff and Jones.  *Id*.  McCarthy was "about to pass by the vehicle."  *Id*.   However, McCarthy noted that when plaintiff saw the police vehicle, he immediately turned away from the direction of the vehicle and quickly leaned over toward the passenger.  *Id*.  McCarthy found it suspicious that plaintiff avoided direct eye contact and turned away in an unusually extreme position, which looked like plaintiff was jamming an item between the seats with his head "virtually in the lap" of the passenger.  *Id*. at PageID.267-268.  McCarthy interpreted plaintiff's actions to be that of placing an item, possibly a weapon, between the seats in reaction to seeing the police vehicle.  *Id*. at PageID.268.  Plaintiff returned to an upright position, holding an unlit half smoked cigarette and a lighter.  *Id*.

McCarthy was familiar with the premises history of the Chicken Coop, which included "many instances of violent crimes including assaults, robberies, and weapons violations, narcotics offenses and intoxicated persons, destruction of property, and crowd control issues."  *Id*. at PageID.267. McCarthy radioed that he would be exiting his vehicle.  *Id*. at PageID.268. Based on plaintiff's unusual movements, McCarthy feared that plaintiff was attempting to conceal a gun or other weapon, and for that reason ordered plaintiff at gunpoint to place his hands on the steering wheel where McCarthy could see them.  *Id*.  The passenger placed his hands on the dashboard.  *Id*. McCarthy could smell a strong odor of marijuana in plaintiff's vehicle.  *Id*.  At the time, possession of marijuana was a criminal misdemeanor.  *Id*.  Based on these circumstances, which included a car parked against a fence occupied by two males, in a location known for violent crimes and narcotic offenses, late at night when violent crimes and drug transactions are more likely to occur, the Court concludes that Officer McCarthy had a reasonable suspicion to detain plaintiff. *See Davis*, 430 F.3d

at 354; *Martin*, 289 F.3d at 398; *United States v. Reeves*, No. 1:06-cr-291, 2007 WL 1238885 at *2 (W.D. Mich. April 27, 2007) ("[t]he smell of marijuana alone constitutes probable cause to believe that drugs are in the vehicle and will justify searching without a warrant"), quoting *United States v. $188,170.00 in U.S. Currency*, 69 Fed. Appx. 714, 716 (6th Cir.2003).

The next question is whether McCarthy's decision to unholster his weapon was reasonable. "[I]f the surrounding circumstances give rise to a justifiable fear for personal safety, a seizure effectuated with weapons drawn may properly be considered an investigative stop." *United States v. Hardnett*, 804 F.2d 353, 357 (6th Cir. 1986). In a situation where the officers have reason to believe that the occupants of the vehicle are armed and dangerous, "officers certainly may . . . order occupants out of the car." *Id*. A police officer should not be required to risk his life in order to make an investigatory stop. *See United States v. Spencer*, 91 F.3d 145 (6th Cir. 1996) ("To require an officer to risk his life in order to make an investigatory stop would run contrary to the intent of *Terry v. Ohio*."). Here, given plaintiff's actions, the fact that his car was parked next to a fence, the criminal history of the location and the time, the Court concludes that McCarthy's decision to unholster his weapon was reasonable.

## 2.    Fourth Amendment claims against Officers Host and Wortz

Plaintiff also alleged that he was illegally seized by Officers Host and Wortz, when they removed him from the car and handcuffed him. In his affidavit, Officer Host stated that he and Office Wortz arrived at the parking lot after receiving a radio call from Officer McCarthy. Host Aff. (docket no. 44-6, PageID.280). Officer Host stated that he was familiar with the problems in the Chicken Coop parking lot, which included shootings, violent crimes, fights and drug deals. *Id*. Although it was late, the parking lot was quite well lit. *Id*. Officer Host stated that plaintiff did not

9

follow Officer McCarthy's instructions to place his hands on the steering wheel, that plaintiff "reached down with his hands out of sight to the left of the driver door and the driver's seat" and created an immediate concern that plaintiff might be reaching for a weapon. *Id*. Based on safety concerns, Officer McCarthy directed plaintiff to get out of the car. *Id*. At that point Host and Wortz took plaintiff out of the car. *Id*. Within seconds of removing plaintiff, Host observed a marijuana cigarette tucked behind plaintiff's ear. *Id*. at PageID.281. Plaintiff was handcuffed, searched and placed in the rear of the patrol car. *Id*.

In his affidavit, Officer Wortz stated that the Chicken Coop is an area GRPD Officers are routinely expected to patrol based on its long history of criminal violations. Wortz Aff. (docket no. 44-7, PageID.285). Officer Wortz stated that plaintiff ignored instructions to keep his hand on the steering wheel and reached down with his left hand out of sight. *Id*. This movement created a legitimate concern that plaintiff "may be reaching for a weapon." *Id*. Wortz assisted in removing plaintiff from the car, noting that this took "relatively little effort and was accomplished within a matter of a second." *Id*. Wortz also observed a marijuana cigarette behind plaintiff's ear. *Id*. Officers Host and Wortz, having physical control of plaintiff, moved him away from the vehicle and began the process of placing handcuffs on him. *Id*.

In addition to the factors listed in § III.A.2., actions such as ignoring verbal commands and engaging in evasive behavior give officers reasonable suspicion that a suspect had a weapon. *See United States v. Pearce*, 513 F.3d 347, 378 (6th Cir. 2008) (presence in a high crime area, evasive movements, and reaching for waistband provides reasonable suspicion for investigatory stop.) Here, defendants approached plaintiff in a high crime area. He ignored verbal commands, engaged in erratic movements, and reached down into the car with his hands out of sight. These

10

actions would give defendants reasonable suspicion that plaintiff had a weapon.  Finally, plaintiff admitted in his verified complaint that "a half smoked marihuana cigarette was found tucked behind his right ear."  Compl. at PageID.5.  Based on this record, which includes plaintiff's admission that he possessed marijuana, the officers had probable cause to place him under arrest for the misdemeanor of possession of marijuana after removing him from the vehicle.  *See Beck v. Ohio*, 379 U.S. 89, 91 (1964) (whether an arrest was constitutionally valid depends on whether "at the moment the arrest was made, the officers had probable cause to make it -- whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense").  For these reasons, the Court concludes that none of the defendants violated plaintiff's Fourth Amendment rights.  Accordingly, defendants' motion for summary judgment should be granted as to Count I.

### B.    Counts II and IV (conspiracy)

Plaintiff alleged that defendants, all of whom were employees of the City of Grand Rapids, engaged in a conspiracy against him in violation of 42 U.S.C. §§ 1983 and 1985(3).  Plaintiff's claim is without merit.  The intra-corporate conspiracy doctrine provides that where "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy."  *Amadasu v. The Christ Hospital*, 514 F.3d 504, 507 (6th Cir. 2008).

> A conspiracy claim under § 1983, like a conspiracy claim under § 1985, requires an agreement between two parties.  "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy.  A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."  *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 n. 4 (6th Cir.2010) (quoting *Hull*, 926 F.2d at 509-10); *see also Doherty v. Am. Motors Corp.*, 728 F.2d 334, 339 (6th Cir.1984) (noting

that the intra-corporate conspiracy doctrine has been "consistently applied in allegations of conspiracy under the Civil Rights Act."). This Court concludes, as have a majority of courts within this circuit, that the intra-corporate conspiracy doctrine applies to claims under § 1983. *See, e.g., Lundy v. City of Pontiac*, No. 12–CV–10965, 2013 WL 5372873, at *8 (E.D.Mich. Sept. 25, 2013) (holding that the intra-corporate conspiracy doctrine barred a § 1983 conspiracy claim against the city); *Audio Visual Equip. & Supplies, Inc. v. Cnty. of Wayne*, No. 06–10904, 2007 WL 4180974, at *5 (E.D. Mich. Nov. 27, 2007) (rejecting argument that intra-corporate doctrine did not apply to § 1983 actions); *McBride v. Vill. of Michiana*, No. 4:92–CV–155, 1998 WL 276139, at *13 (W.D. Mich. Apr. 2, 1998) (Quist, J.) (holding that the intra-corporate conspiracy doctrine required dismissal of § 1983 conspiracy claim).

*Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 631- 32 (W.D. Mich. 2015). Thus, where a plaintiff's conspiracy claim under § 1983 is premised on an agreement between employees of a city, the claim is barred by the intra-corporate conspiracy doctrine. *Id*. at 632. The doctrine also bars plaintiff's conspiracy claim under § 1985(3). *See Hull v. Cuyahoga Valley Joint Vocational School District Board of Education*, 926 F.2d 505, 509 (6th Cir. 1991) (plaintiff's claim that the school district's superintendent, executive director of the district, and a school administrator conspired to deprive plaintiff of her constitutional rights in violation § 1985(3) was barred by intra-corporate conspiracy doctrine because all of the defendants were agents or employees of district's board of education). Accordingly, plaintiff's conspiracy claims are barred and defendants are entitled to summary judgment as to both Count II and the § 1985 claim alleged in Count IV.

### C.     Count III (excessive force)

### 1.     Officers McCarthy, Host and Wortz

Plaintiff has alleged that Officers McCarthy, Host and Wortz engaged in excessive force in violation of his constitutional rights, and that Officer Kribs did nothing to prevent it. "It is well-recognized that 'the right to make an arrest or investigatory stop necessarily carries with it the

right to use some degree of physical coercion or a threat thereof to effect it.'" *Dorsey v. Barber*, 517 F.3d 389, 399 (6th Cir. 2008), quoting *Graham v. Connor*, 490 U.S. 386, 396.  Claims that law enforcement officers used excessive force in the course of an investigatory stop or arrest are analyzed under the Fourth Amendment's reasonableness standard.  *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008).  The question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them at the moment force is used, without regard to their underlying intent or motivation. *Griffith v. Coburn*, 473 F.3d 650, 656 (6th Cir. 2007).  Thus, the use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id*., quoting *Graham*, 490 U.S. at 396 (citations omitted).  "[W]hen determining the reasonableness of the force used, courts should pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight'" (the "*Graham* factors").  *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001), quoting *Graham*, 490 U.S. at 396.

As discussed, plaintiff alleged in his verified complaint that he was not resisting either Officer Host or Wortz when they snatched him out of the vehicle, violently slammed his head on the hood of police car leaving him "dazed" and then "violently wrenched" plaintiff's arms behind his back.  For their part, defendants stated in their affidavits that plaintiff disobeyed commands to keep his hands on the steering wheel, that he was removed from the vehicle with relatively little effort, and handcuffed.  In his affidavit, Officer Wortz stated that plaintiff was placed across the hood of the car to permit a search incident to arrest based on probable cause of possession of marijuana, that "[h]is body quickly went from a standing position to laying across the hood of the police car," that

13

the change of plaintiff's position from standing to laying across the police car "did not involve a use of force, nor violence, nor was the same necessary to place his body on the hood of the car." Wortz Aff. at PageID.286. A review of the DVD footage from the dash cameras on three police cruisers reveals that plaintiff did not exit the vehicle on his own and that defendants removed him with minimal force. Plaintiff's statement in his verified complaint that Officers Host and Wortz "literally snatched Plaintiff out of the vehicle and proceeded to violently slam him upon the hood of their police car, causing Plaintiff to become dazed" and that the officers "violently wrenched both of Plaintiff's arms behind his back" is pure fiction. The videos are consistent with Officer Wortz' account. In this regard, plaintiff is seen standing handcuffed between the officers while smoking a cigarette, continued to smoke his cigarette until it was removed during the search, talked throughout the search as defendants removed items from his pockets, and then stepped into the backseat of the police cruiser. *See* DVD (docket no. 4-4, #444 at 4:42-7:40; #768 at 1:07-1:35; #518 at 1:26-3:30). In addition, while plaintiff alleged in his verified complaint that he was so scared that lost control of his bladder, none of the videos indicate that plaintiff urinated on himself, i.e., his pants are dry and he is in no apparent distress. *Id*. The video record of plaintiff's removal from his vehicle, handcuffing and search blatantly contradicts plaintiff's version of events as alleged in his verified complaint to the extent that no reasonable jury would believe him. *See Scott*, 550 U.S. at 380 ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."). Accordingly, defendants McCarthy, Host and Wortz should be granted summary judgment as to Count III.

14

### 2.    Officer Kribs

Plaintiff has alleged that Officer Kribs failed to intervene or defend him.  Given these allegations, to prevail on an Eighth Amendment claim against Officer Kribs, plaintiff must prove that Kribs owed plaintiff a duty of protection against the use of excessive force.  *See Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996) ("it is not necessary, in order to hold a police officer liable under § 1983, to demonstrate that the officer actively participated in striking a plaintiff"); *Taberski v. Macomb County*, No. 05-71850, 2006 WL 508642 at *3 (E.D. Mich. March 1, 2006) ("[p]olice officers have a duty to intervene when other officers are beating a person in their presence").  Because there was no use of excessive force by the other officers, Officer Kribs owed no duty to intervene to protect plaintiff.  Accordingly, Officer Kribs should be granted summary judgment as to Count III.

### D.    Equal Protection (Count IV)

 "It is axiomatic that the Equal Protection Clause of the Fourteenth Amendment protects citizens from police action that is based on race."  *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005).  A Fourteenth Amendment claim of selective enforcement could lead to § 1983 liability if a plaintiff demonstrates "purposeful discrimination" in the officers' otherwise valid enforcement of the law against him.  *Cunningham v. Sisk*, 136 Fed. Appx, 771, 774 (6th Cir. 2005), citing *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000).  To prevail on a claim of selective enforcement, plaintiff must establish that the challenged police action "had a discriminatory effect and that it was motivated by a discriminatory purpose."  *Bennett*, 410 F.3d at 818, quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985).  " To show discriminatory effect, a plaintiff can proffer evidence showing similarly situated individuals of another race were treated differently

through statistical evidence or identifying a person of another race who the police treated differently." *Id*. "To show discriminatory purpose, a plaintiff can proffer evidence that an official chose to prosecute or engage in some other action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Bennett*, 410 F.3d at 818 (internal quotation marks omitted). Here, plaintiff has presented no evidence to establish either discriminatory effect or discriminatory purpose. Accordingly, defendants should be granted summary judgment as to the Equal Protection Claim in Count IV.

### E.    Qualified Immunity

Defendants contend that they are entitled to qualified immunity with respect to the force used to remove plaintiff from the car, place him in handcuffs, and search him incident to arrest. Because the Court determined that no constitutional violation occurred, it is unnecessary to address the issue of qualified immunity. As the court explained in *Bakari v. May*, No. 3:10-CV-250, 2011 WL 1743728 (S.D. Ohio May 6, 2011):

> "A finding that a constitutional violation occurred is required to deny defendants qualified immunity[.]" *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 767, n. 9 (6th Cir.2010) (citing *Hills v. Kentucky*, 457 F.3d 583, 587 (6th Cir.2006). Absent any cognizable claim asserting a constitutional violation, the Court "need not reach the issues of qualified immunity[.]" *Id*.; *Criswell v. Wayne County, Kentucky*, 165 F.3d 26 (6th Cir.1998) (stating that "[b]ecause we find no constitutional violation, we need not reach the issue of qualified immunity"); *Mays v. City of Dayton*, 134 F.3d 809, 813 (6th Cir.1998) (stating that "[i]f the court finds no valid claim pursuant to 42 U.S.C. § 1983, the court need not reach the issue of qualified immunity").

*Bakari*, 2011 WL 1743728 at *7.

## IV.    State law claims (Count V)

Finally, plaintiff has alleged that defendants committed the state law torts of assault and battery.  The Court exercised its supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367, presumably because those claims were intimately related to the alleged § 1983 violation.  *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy").  For the reasons discussed, defendants are entitled to summary judgment on all of plaintiff's federal claims.  The dismissal of plaintiff's federal claim against defendants requires the court to re-examine the issue of supplemental jurisdiction for state law claims against these defendants.  Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction."  Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998).  As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996).  There is no reason to retain supplemental jurisdiction over plaintiff's state law claims.  Accordingly, the Court should dismiss the state law claims asserted against defendants.

17

## V.    Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 43) be **GRANTED** as to Counts I, II, III and IV, that Count V be **DISMISSED** pursuant to 28 U.S.C. § 1367(c)(3), and that this action be **TERMINATED**.


Dated:  March 31, 2017                    /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).